**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | | |
|---|---|---|
| LINDA DUGAN and BRIAN DUGAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| Vs. | ) | |
| | ) | CIVIL ACTION FILE NO.: |
| MEMORIAL HEALTH UNIVERSITY | ) | |
| MEDICAL CENTER, INC., MPPG, INC., | ) | |
| SAVANNAH PERINATOLOGY | ) | _____ |
| ASSOCIATES, INC., JOHN DOE | ) | |
| CORPORATION, INC., HAROLD | ) | |
| BIVINS, M.D., and KATHERINE | ) | |
| FRIZZELL, M.D., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW Linda Dugan and Brian Dugan, Plaintiffs in the above-styled civil action, and files this, their Complaint for Damages, respectfully showing this Honorable Court the following:

1.

Plaintiffs are married. Plaintiff Brian Dugan is a commissioned officer in the United States Army and, at the time of the facts giving rise to this Complaint took place, Plaintiff Brian Dugan and his wife temporarily resided in the State of Georgia while he was stationed at Fort Stewart, Georgia. By virtue of Plaintiff Brian Dugan's military service and the constant relocations it requires of Plaintiffs, they are non-residents of Georgia and have never changed their domicile to Georgia.

1

2.

Defendant Memorial Health University Medical Center, hereinafter "MHUMC," is a nonprofit corporation existing under the laws of the State of Georgia for the purpose of engaging in the business of rendering professional medical services to the public for compensation, which corporation is subject to the jurisdiction of this Court. Defendant MHUMC may be served with process of this Complaint by serving its registered agent, Memorial Health Corporate Services, Inc. at 4700 Waters Avenue, Savannah, Chatham County, Georgia, 31404.

3.

Defendant MPPG, Inc., hereinafter "MPPG," is a domestic corporation existing under the laws of the State of Georgia for the purpose of engaging in the business of rendering professional medical services to the public for compensation, which corporation is subject to the jurisdiction of this Court. Service may be perfected upon MPPG by serving its registered agent, Memorial Health Corporate Services, Inc. at 4700 Waters Avenue, Savannah, Chatham County, Georgia, 31404.

4.

Defendant Savannah Perinatology Associates, Inc., hereinafter "SPA," was a domestic corporation existing under the laws of the State of Georgia for the purpose of engaging in the business of rendering professional medical services to the public for compensation, which corporation is subject to the jurisdiction of this Court. This corporation was in existence from 1995 until 2000 when it was dissolved, according to the Georgia Secretary of State; however, SPA has been conducting business under its previously-registered legal name since it was dissolved in 2000. At the time of the facts

2

giving rise to this Complaint occurred, SPA was still conducting business under this name and still maintains this legal name upon contact. The registered agent listed for SPA is Robert A. Colvin, the former President/CEO at Memorial Health University Medical Center from 1997 until 2008. Upon information and belief, Mr. Colvin is no longer affiliated with MHUMC and is currently living and working outside the State of Georgia. Therefore, upon information and belief, service may be perfected upon SPA by serving MHUMC's registered agent, Memorial Health Corporate Services, Inc. at 4700 Waters Avenue, Savannah, Chatham County, Georgia, 31404, the same address listed for SPA's previous registered agent Robert A. Colvin.

5.

Defendant John Doe Corporation, Inc., hereinafter "John Doe, Inc." is an unidentified domestic corporation existing under the laws of the State of Georgia for the purpose of engaging in the business of rendering professional medical services to the public for compensation, which corporation is subject to the jurisdiction of this Court. Defendant "John Doe, Inc." is subject to the jurisdiction and venue of this Court by virtue of being a joint-tortfeasor. Service may be perfected upon John Doe, Inc. by serving its registered agent, upon information and belief, Memorial Health Corporate Services, Inc. at 4700 Waters Avenue, Savannah, Chatham County, Georgia, 31404.

6.

Defendant Harold Bivins, M.D., hereinafter "Bivins," is currently, upon information and belief, a practicing medical doctor and resident of the State of New Jersey; however, Bivins also maintains an active medical license in the State of Georgia and retains hospital privileges at MHUMC, where he held an appointment as Director of

3

Maternal-Fetal Medicine.  He may be served with process of this Complaint at 95 Madison Avenue, Suite 203, Morristown, NJ 07960.

7.

Defendant Katherine A. Frizzell, M.D., hereinafter "Frizzell," is a resident of the State of Georgia, where she maintains an active medical license.  At the time of the facts giving rise to the present Complaint, Frizzell was employed by MHUMC as a resident physician.  She may be served with process of this Complaint at 870-A Austin Drive, Demorest, GA 30535.

8.

In June 2008, and at all times pertinent and material to this Complaint, Defendant Bivins was the agent and/or employee of Defendant MHUMC, so that any acts or omissions of Defendant Bivins are chargeable to and attributable to Defendant MHUMC, by virtue of the relationship between it and Defendant Bivins.

9.

In June 2008, and at all times pertinent and material to this Complaint, Defendant Bivins was the agent and/or employee of Defendant MPPG, so that any acts or omissions of Defendant Bivins are chargeable to and attributable to Defendant MPPG, by virtue of the relationship between it and Defendant Bivins.

10.

In June 2008, and at all times pertinent and material to this Complaint, Defendant Bivins was the agent and/or employee of Defendant SPA, so that any acts or omissions of Defendant Bivins are chargeable to and attributable to Defendant SPA, by virtue of the relationship between it and Defendant Bivins.

4

11.

In June 2008, and at all times pertinent and material to this Complaint, Defendant Bivins was the agent and/or employee of Defendant John Doe, Inc., so that any acts or omissions of Defendant Bivins are chargeable to and attributable to Defendant John Doe, Inc., by virtue of the relationship between it and Defendant Bivins.

12.

In June 2008, and at all times pertinent and material to this Complaint, Defendant Frizzell was the agent and/or employee of Defendant MHUMC, so that any acts or omissions of Defendant Frizzell are chargeable to and attributable to Defendant MHUMC, by virtue of the relationship between it and Defendant Frizzell.

13.

In June 2008, and at all times pertinent and material to this Complaint, Defendant MHUMC was the employer and/or contractor of Dutchen Baker, R.N., hereinafter "Baker," so that any acts or omissions of Baker are chargeable to and attributable to Defendant MHUMC, by virtue of the relationship between it and Baker.

14.

In June 2008, and at all times pertinent and material to this Complaint, Defendant MHUMC was the employer and/or contractor of Julie Gottwald, C.S.T., hereinafter "Gottwald," so that any acts or omissions of Gottwald are chargeable to and attributable to Defendant MHUMC, by virtue of the relationship between it and Gottwald.

5

15.

This Court has subject matter jurisdiction of this matter pursuant to 28 U.S.C. § 1332. The amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000.

16.

This Court has personal jurisdiction over the parties.

17.

Venue is proper in the Southern District of Georgia, Savannah Division, pursuant to 28 U.S.C. § 1391(a) and S.D. Ga. L.R. 2.1 because at least one of the Defendants reside in this division and district and a substantial part of the events giving rise to this claim occurred in this division and district.

## FACTS COMMON TO ALL COMPLAINTS

18.

Plaintiffs herein reallege and reincorporate the allegations contained in Paragraphs 1 through 17 of their Complaint as if said allegations had been set forth fully herein.

19.

Plaintiff Linda Dugan was a forty-one year old pregnant female who was admitted to MHUMC on June 23, 2008, in active labor, and with complaints of nausea, vomiting, and diarrhea. In a previous pregnancy, Mrs. Dugan had required a cesarean section, and following admission, a repeat cesarean section was planned.

20.

The cesarean delivery was performed by obstetrician/gynecologist, Dr. Harold Bivins, with the assistance of resident, Dr. Katherine Frizzell. Dutchen Baker, R.N. and Julie Gottwald, C.S.T. were also present and assisted in the cesarean section. A baby boy was delivered to Mr. and Mrs. Dugan. The dictation physician for the operative report was Dr. Frizzell, and the following was documented:

> . . .The fascia was closed in a running fashion using 0 Vicryl and tied to the right of the patients midline. The subcutaneous space was irrigated and any small bleeders were cauterized using the Bovie. The skin was closed with staples. All counts were correct x 2. The patient was taken to the recovery room in stable condition having tolerated the procedure well...

21.

After delivery, Mrs. Dugan suffered considerable postoperative pain, with "guarded movement, sharp pains, and throbbing pains."

22.

Approximately one month later, on July 24, 2008, Mrs. Dugan underwent diagnostic testing for continued complaints of abdominal pain. On examination, it was noted that gallstones (cholelithiasis) were present within her gallbladder, but at the time, there was no evidence of cholecystitis (inflammation of the gallbladder), secondary to the presence of the gallstones.

23.

On August 12, 2008, she was evaluated by general and colorectal surgeon, Dr. S. Alan Lord, who documented:

> ...2 episodes now of [right upper quadrant abdominal] pain with associated [nausea and vomiting]. First episode was 6 weeks ago [when]

7

she delivered at that time via [cesarean section]. Had another episode two weeks ago and sent at that time for US showing gallstones . . .

24.

The diagnosis was symptomatic cholelithiasis, six weeks postpartum, after cesarean section. Surgical intervention was recommended.

25.

On September 22, 2008, Mrs. Dugan was again admitted to MHUMC and underwent a laparoscopic cholecystectomy (removal of the gallbladder). The procedure was performed by general surgeon, Dr. Carl Boyd, and resident, Dr. N. Bradley Easterlin. No complications were reported.

26.

Despite this surgery, Mrs. Dugan complained of persistent abdominal pain, and thus, additional diagnostic studies were obtained. When a CT scan, obtained with the use of contrast on September 29, 2008, revealed a "5cm radiopacity in the pelvis likely representing a foreign body," Mrs. Dugan was readmitted to MHUMC.

27.

On October 2, 2008, Mrs. Dugan underwent an exploratory laparatomy, when it was discovered that a surgical sponge (a/k/a "lap sponge"), used during the June 23, 2008 cesarean section, had not been removed. The sponge was found within Mrs. Dugan's abdominal cavity, adherent to her sigmoid colon, as well as the posterior cul-de-sac (the space between the uterus and the rectum).

8

28.

In subsequent months, Mrs. Dugan continued to experience difficulties and chronic pain within her abdominal cavity as a result of her formation of scar tissue and adhesions due to the surgical sponge left in her abdomen.

29.

The location in Mrs. Dugan's abdomen where the sponge was left is undoubtedly a remnant from the June 23, 2008 cesarean section, as the location of the gallbladder is in the upper right quadrant of the abdomen, and the uterus and cul-de-sac are not in, or near, the surgical field involved in a laparoscopic cholecystectomy. It cannot be attributed to Mrs. Dugan's previous cesarean section based on the manner the lap sponge was able to be removed and the lack of support for such an assertion in Mrs. Dugan's clinical history.

30.

When using a lap sponge in cesarean sections, it is a deviation from the accepted standard of care for the physician not to know that the lap sponge is present and also not to remove it at the conclusion of the surgery.

31.

During the course of treatment and care provided to Plaintiff Linda Dugan at MHUMC, Defendant Bivins deviated from the accepted standards of care, and he failed to exercise the degree of skill and care that is ordinarily employed by the medical profession in general under like conditions and similar circumstances as specifically set forth in the Affidavit of Dr. Jeffrey Koren, attached hereto as Exhibit A and incorporated as if fully pleaded herein. Specifically, Dr. Bivins failed to recognize that a lap sponge was still present in Mrs. Dugan's abdomen at the conclusion of the surgery, failed to

remove said sponge from Mrs. Dugan's abdomen, and failed to perform an appropriate physical examination, which would have included an x-ray of Mrs. Dugan's abdomen, which would have showed the presence of the remaining sponge.

32.

The accepted standards of care would require a physician in Defendant Bivins's position, and under the circumstances described herein, to ascertain that a sponge was still present in Mrs. Dugan's abdomen prior to the end of the surgery, to remove the sponge from Mrs. Dugan's abdomen prior to the end of the surgery, and to confirm that all sponges were removed from the surgical field. Had Bivins complied with the accepted standards of care, Mrs. Dugan would not have continued to suffer from pain in lower quadrant of her abdominal cavity, as well as the resultant pain of the scar tissue which formed between the sponge and was adherent to her sigmoid colon, as well as the posterior cul-de-sac, which necessitated further surgery and ongoing pain management.

33.

During the course of treatment and care provided to Plaintiff Linda Dugan at MHUMC, Defendant Frizzell deviated from the accepted standards of care, and she failed to exercise the degree of skill and care that is ordinarily employed by the medical profession in general under like conditions and similar circumstances as specifically set forth in the Affidavit of Dr. Jeffrey Koren, attached hereto as Exhibit A and incorporated as if fully pleaded herein. Specifically, Dr. Frizzell failed to recognize that a lap sponge was still present in Mrs. Dugan's abdomen at the conclusion of the surgery, failed to remove said sponge from Mrs. Dugan's abdomen, and failed to perform an appropriate

physical examination, which would have included an x-ray of Mrs. Dugan's abdomen, which would have showed the presence of the remaining sponge.

34.

The accepted standards of care would require a physician in Defendant Frizzell's position, and under the circumstances described herein, to ascertain that a sponge was still present in Mrs. Dugan's abdomen prior to the end of the surgery, to remove the sponge from Mrs. Dugan's abdomen prior to the end of the surgery, and to confirm that all sponges were removed from the surgical field. Had Frizzell complied with the accepted standards of care, Mrs. Dugan would not have continued to suffer from pain in lower quadrant of her abdominal cavity, as well as the resultant pain of the scar tissue which formed between the sponge and was adherent to her sigmoid colon, as well as the posterior cul-de-sac, which necessitated further surgery and ongoing pain management.

35.

During the course of treatment and care provided to Plaintiff Linda Dugan at MHUMC, Baker, the circulator nurse, deviated from the accepted standards of care, and she failed to exercise the degree of skill and care that is ordinarily employed by the medical profession in general under like conditions and similar circumstances as specifically set forth in the Affidavits of Jeffrey Koren, M.D., and Shannon Hicks, R.N., attached hereto as Exhibits A and B, respectively, and incorporated as if fully pleaded herein. Specifically, Baker failed to accurately account for the sponges used during the surgery, failed to recognize that a lap sponge was still present in Mrs. Dugan's abdomen at the conclusion of the surgery, and failed to notify Bivins and/or Frizzell that a sponge was still present and needed to be removed from Mrs. Dugan's abdomen.

11

36.

The accepted standards of care would require a circulator nurse in Nurse Baker's position, and under the circumstances described herein, to correctly confirm the counted number of sponges used during Mrs. Dugan's cesarean section, to correctly ascertain that a sponge was still present in Mrs. Dugan's abdomen prior to the end of the surgery, to notify Bivins and/or Frizzell to remove the sponge from Mrs. Dugan's abdomen prior to the end of the surgery, and to confirm that all sponges had been removed from the surgical field. Had Baker complied with the accepted standards of care, Mrs. Dugan would not have continued to suffer from pain in lower quadrant of her abdominal cavity, as well as the resultant pain of the scar tissue which formed between the sponge and was adherent to her sigmoid colon, as well as the posterior cul-de-sac, which necessitated further surgery and ongoing pain management.

37.

During the course of treatment and care provided to Plaintiff Linda Dugan at MHUMC, Gottwald, the scrub technician, deviated from the accepted standards of care, and she failed to exercise the degree of skill and care that is ordinarily employed by the medical profession in general under like conditions and similar circumstances as specifically set forth in the Affidavits of Jeffrey Koren, M.D. and Shannon Hicks, R.N., attached hereto as Exhibits A and B, respectively, and incorporated as if fully pleaded herein. Specifically, Gottwald failed to accurately count the sponges used during the surgery, failed to recognize that a lap sponge was still present in Mrs. Dugan's abdomen at the conclusion of the surgery, and failed to notify Baker, Bivins, and/or Frizzell that a sponge was still present and needed to be removed from Mrs. Dugan's abdomen.

38.

The accepted standards of care would require a scrub technician in Gottwald's position, and under the circumstances described herein, to correctly confirm the counted number of sponges used during Mrs. Dugan's cesarean section, to correctly ascertain that a sponge was still present in Mrs. Dugan's abdomen prior to the end of the surgery, to notify Baker, Bivins, and/or Frizzell to remove the sponge from Mrs. Dugan's abdomen prior to the end of the surgery, and to confirm that all sponges had been removed from the surgical field. Had Gottwald complied with the accepted standards of care, Mrs. Dugan would not have continued to suffer from pain in lower quadrant of her abdominal cavity, as well as the resultant pain of the scar tissue which formed between the sponge and was adherent to her sigmoid colon, as well as the posterior cul-de-sac, which necessitated further surgery and ongoing pain management.

39.

The failure on the part Baker, Gottwald, Bivins, and Frizzell, to account for and remove the sponge left in Mrs. Dugan's abdomen prior to the close of surgery directly caused the subsequent pain and discomfort that she suffered for several months, as well as directly caused the scar tissue and adhesions present in her abdomen that have required subsequent surgeries.

40.

Had Baker, Gottwald, Bivins, and Frizzell properly accounted for all sponges used during the surgery and not left one inside Mrs. Dugan's abdomen, this would have significantly altered Mrs. Dugan's medical treatment and prevented and/or mitigated her injuries.

41.

As a direct and proximate result of Defendants' negligence and failure to exercise that degree of care required by the medical profession generally, Plaintiff Linda Dugan was injured and suffered damages as set forth herein and Defendants are proximately responsible for the same.

## COUNT 1- MEDICAL MALPRACTICE

42.

Plaintiffs herein reallege and reincorporate the allegations contained in Paragraphs 1 through 41 of their Complaint as if said allegations had been set forth fully herein.

43.

Mrs. Dugan shows that as a result of the negligence of the Defendants, she has incurred and will continue to incur certain medical expenses for money spent or owed for the medical care and treatment necessitated by her injuries arising out of the negligent medical treatment provided by Defendants. Mrs. Dugan shows that these expenses are continuing and she reserves the right to amend this portion of the Complaint at a later date to set forth those expenses with specificity.

44.

Mrs. Dugan shows that as a result of the negligence of Defendants, that she has missed and been unable to work and has lost wages as a result of her injuries and disabilities. Mrs. Dugan shows that she is entitled to the actual value of the loss of her wages from the date of her injury until the time of trial. Mrs. Dugan further shows that

said lost wages are continuing and she reserves the right to amend this portion of the Complaint at a later date to set forth the amount of her lost wages with specificity.

45.

As a result of the negligence of the Defendants, Mrs. Dugan suffers, has suffered, and will continue to suffer in the future great pain, both mental and physical. Mrs. Dugan is entitled to general damages for her pain and suffering, both mental and physical, in an amount to be determined by the enlightened conscious of a fair and impartial jury.

46.

Mrs. Dugan shows that the sole cause of her injuries and damages was the negligence of the Defendants and that the damages complained were the direct and proximate result of Defendants' negligence.

## COUNT 2- CLAIM FOR LOSS OF CONSORTIUM

47.

Plaintiffs herein reallege and reincorporate the allegations contained in Paragraphs 1 through 46 of their Complaint as if said allegations had been set forth fully herein.

48.

Plaintiff Brian Dugan shows that he is the husband of Plaintiff Linda Dugan.

49.

Plaintiff Brian Dugan shows that as a result of his wife's injuries, he lost the services, comfort, care, and consortium of his wife, causing him grievous and serious damage, pain, and suffering. By reason of his wife's aforesaid injuries, his wife was limited in her ability to perform her duties and could no longer provide Plaintiff Brian

Dugan with the companionship, counsel, and care that he received prior to her illness. Plaintiff Brian Dugan therefore claims damages against the Defendants for the loss of his wife's consortium in an amount to be determined by the enlightened conscience of a fair and impartial jury.

50.

Plaintiff Brian Dugan shows that all of the injuries and damages herein alleged were proximately caused by the negligent acts of Defendants.

## COUNT 3: CLAIM AGAINST DEFENDANT MHUMC
## UNDER RESPONDEAT SUPERIOR

51.

Plaintiffs herein reallege and reincorporate the allegations contained in Paragraphs 1 through 50 of their Complaint as if said allegations had been set forth fully herein.

52.

At all times relevant to the incident out of which this Complaint arises, Defendant Bivins was an agent and/or employee of Defendant MHUMC.

53.

The tortious conduct of Defendant Bivins described throughout the Complaint was committed during and within the scope of his agency and/or employment with Defendant MHUMC.

54.

As Defendant Bivins's principal and/or employer, Defendant MHUMC is vicariously liable for the negligence of Defendant Bivins under the doctrine of respondeat superior.

16

## COUNT 4: CLAIM AGAINST DEFENDANT MHUMC
## UNDER RESPONDEAT SUPERIOR

55.

Plaintiffs herein reallege and reincorporate the allegations contained in Paragraphs 1 through 54 of their Complaint as if said allegations had been set forth fully herein.

56.

At all times relevant to the incident out of which this Complaint arises, Defendant Frizzell was an agent and/or employee of Defendant MHUMC.

57.

The tortious conduct of Defendant Frizzell described throughout the Complaint was committed during and within the scope of her agency and/or employment with Defendant MHUMC.

58.

As Defendant Frizzell's principal and/or employer, Defendant MHUMC is vicariously liable for the negligence of Defendant Frizzell under the doctrine of respondeat superior.

## COUNT 5: CLAIM AGAINST DEFENDANT MHUMC
## UNDER RESPONDEAT SUPERIOR

59.

Plaintiffs herein reallege and reincorporate the allegations contained in Paragraphs 1 through 58 of their Complaint as if said allegations had been set forth fully herein.

17

60.

At all times relevant to the incident out of which this Complaint arises, Dutchen Baker, R.N. was an agent and/or employee of Defendant MHUMC.

61.

The tortious conduct of Dutchen Baker, R.N., described throughout the Complaint, was committed during and within the scope of her agency and/or employment with Defendant MHUMC.

62.

As Dutchen Baker, R.N.'s principal and/or employer, Defendant MHUMC is vicariously liable for the negligence of Dutchen Baker under the doctrine of respondeat superior.

## COUNT 6: CLAIM AGAINST DEFENDANT MHUMC UNDER RESPONDEAT SUPERIOR

63.

Plaintiffs herein reallege and reincorporate the allegations contained in Paragraphs 1 through 62 of their Complaint as if said allegations had been set forth fully herein.

64.

At all times relevant to the incident out of which this Complaint arises, Julie Gottwald, C.S.T. was an agent and/or employee of Defendant MHUMC.

65.

The tortious conduct of Julie Gottwald, C.S.T., described throughout the Complaint, was committed during and within the scope of her agency and/or employment with Defendant MHUMC.

18

66.

As Julie Gottwald, C.S.T.'s principal and/or employer, Defendant MHUMC is vicariously liable for the negligence of Julie Gottwald under the doctrine of respondeat superior.

## COUNT 7- CLAIM AGAINST MPPG UNDER RESPONDEAT SUPERIOR

67.

Plaintiffs herein reallege and reincorporate the allegations contained in Paragraphs 1 through 66 of their Complaint as if said allegations had been set forth fully herein.

68.

At all times relevant to the incident out of which this Complaint arises, Defendant Bivins was an agent and/or employee of Defendant MPPG.

69.

The tortious conduct of Defendant Bivins described throughout the Complaint was committed during and within the scope of his agency and/or employment with Defendant MPPG.

70.

As Defendant Bivins's principal and/or employer, Defendant MPPG is vicariously liable for the negligence of Defendant Bivins under the doctrine of respondeat superior.

19

## COUNT 8- CLAIM AGAINST SPA UNDER RESPONDEAT SUPERIOR

71.

Plaintiffs herein reallege and reincorporate the allegations contained in Paragraphs 1 through 70 of their Complaint as if said allegations had been set forth fully herein.

72.

At all times relevant to the incident out of which this Complaint arises, Defendant Bivins was an agent and/or employee of Defendant SPA.

73.

The tortious conduct of Defendant Bivins described throughout the Complaint was committed during and within the scope of his agency and/or employment with Defendant SPA.

74.

As Defendant Bivins's principal and/or employer, Defendant SPA is vicariously liable for the negligence of Defendant Bivins under the doctrine of respondeat superior.

## COUNT 9- CLAIM AGAINST JOHN DOE, INC.
## UNDER RESPONDEAT SUPERIOR

75.

Plaintiffs herein reallege and reincorporate the allegations contained in Paragraphs 1 through 74 of their Complaint as if said allegations had been set forth fully herein.

76.

At all times relevant to the incident out of which this Complaint arises, Defendant Bivins was an agent and/or employee of Defendant John Doe, Inc.

20

77.

The tortious conduct of Defendant Bivins, described throughout the Complaint, was committed during and within the scope of his agency and/or employment with Defendant John Doe, Inc.

78.

As Defendant Bivins's principal and/or employer, Defendant John Doe, Inc. is vicariously liable for the negligence of Defendant Bivins under the doctrine of respondeat superior.

## DEMAND FOR JURY TRIAL

79.

Plaintiffs Linda Dugan and Brian Dugan demand a trial by jury on all issues that may properly be submitted to the jury.

80.

Plaintiffs demand judgment in excess of $75,000.00.

WHEREFORE, Plaintiffs pray:

1)    That service of this Complaint and Summons be perfected upon all Defendants as provided by law;

2)    That Plaintiffs have and recover of the Defendants for Plaintiff Linda Dugan's personal injuries, pain and suffering, both mental and physical, past and ongoing;

3)    That Plaintiffs have and recover judgment against the Defendant for Plaintiff Linda Dugan's medical expenses, lost wages, and other necessary expenses;

21

4)      That Plaintiff Brian Dugan recover judgment against the Defendants for

        the loss of his wife's consortium and services;

5)      That Plaintiffs be awarded judgment in excess of $75,000.00;

6)      That costs of this action be borne by Defendants;

7)      That Plaintiffs have trial by jury; and

8)      That Plaintiffs have such other and further relief as this Court deems just

        and equitable.

This 5th day of May, 2010.

**EDENFIELD, COX, BRUCE & CLASSENS, P.C.**

*V. Sharon Edenfield*

**GERALD M. EDENFIELD**
State Bar No. 239100
**SUSAN W. COX**
State Bar No. 738550
**V. SHARON EDENFIELD**
State Bar No. 141646
Attorneys for Plaintiff

P.O. Box 1700
Statesboro, GA 30459
912-764-8600
912-764-8862  facsimile